DANIEL JOSEPH STAKEM, III, )
and wife, CAROL STAKEM, )
　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　)
v. ) No. 3:04-CV-311
) (Shirley)
KIMBER LEE RANDOLPH, )
　　　　　　　　　　　　　　)
　　　　Defendant. )

## MEMORANDUM OPINION

　　　　This case arises out of a motor vehicle accident. The plaintiff Daniel Joseph Stakem and the plaintiffs' uninsured motorist ("UM") insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm") both move for summary judgment. For the reasons set forth below, the Motion for Summary Judgment by State Farm Mutual Automobile Insurance Company [Doc. 12] is **GRANTED.** The Motion for Summary Judgment by Plaintiff Daniel Joseph Stakem [Doc. 15] is **DENIED**.

I.

　　　　The underlying facts are undisputed. On July 20, 2003, the plaintiff Daniel Stakem was operating his motorcycle in the Great Smoky Mountains National Park with his wife Carol riding along as a passenger. The defendant Kimber Lee Randolph was an automobile traveling in the opposite direction. Ms. Randolph made a left turn in front of the plaintiffs' motorcycle, causing a collision. The motorcycle impacted the right rear quarter panel of Ms. Randolph's vehicle, and the Stakems were thrown from the motorcycle.

Mr. and Mrs. Stakem both received full per person policy limits of $25,000 from the liability carrier for Ms. Randolph, and the plaintiffs furnished releases. Mrs. Stakem also received two $100,000 payments, for a total of $200,000, representing the full policy limits available to her through her two policies of uninsured motorist coverage with the plaintiffs' uninsured/underinsured motorist insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm").[1]

The parties proceeded to arbitrate Mr. Stakem's entitlement to additional potential benefits. The arbitration hearing was held on July 15, 2005. Both plaintiffs testified at the hearing, as did Florida neuropsychologist Dr. Douglas J. Mason. On August 10, 2005, the arbitrator submitted the Arbitration Award to this Court. [Doc. 11]. The arbitrator found that Mr. Stakem had suffered a "serious emotional injury" as a result of the defendant's negligence. The arbitrator further noted that "Dr. Mason testified that although Mr. Stakem has the potential to return to a reasonable level of functioning he may never completely recover." [Id.]. The arbitrator awarded Mr. Stakem medical expenses in the amount of $8,638.71; future medical expenses of $1,800.00; past and future pain and suffering in the amount of $30,000.00; and past and future loss of enjoyment of life in the amount of $30,000.00, for a total of $70,438.71 in damages. [Id.].

As Mr. Stakem has already received $25,000 from Ms. Randolph's liability carrier, the issue before the Court is whether Mr. Stakem has any benefits available to him under the State Farm policies that would pay the balance of the Arbitrator's Award in the amount of $45,438.71.

---

[1] The two State Farm policies in question are identical in terms. One policy insures a 2003 Ford Explorer. The other insures a 1993 Mercury Sable.

II.

As a threshold matter, the Court must address the plaintiffs' contention that this case should be decided under Tennessee's Uninsured Motorist ("UM") Statute, Tenn. Code Ann. § 56-7-1201, *et seq.* and Tennessee tort law. [Doc. 16]. Specifically, the plaintiffs contend that because State Farm invoked the arbitration provisions of the Tennessee Uninsured Motorist Statute, Florida law cannot be applied to determine whether the insurance policies provide for recovery of Mr. Stakem's damages. The plaintiffs argue that to apply Florida law would result in a waste of judicial resources because the plaintiffs already have an arbitration award under Tennessee law, but would also have the right under Florida law to pursue a trial by jury on the issue of insurance coverage. Thus, the plaintiffs argue, "the only reasonable way" for this case to proceed is for the Court to apply Tennessee law and enter a judgment in favor of Mr. Stakem for the entire arbitration award.

State Farm argues that the parties agreed to follow the arbitration procedures set forth in the Tennessee UM Statute, despite the fact that the Statute applies only to insurance policies "delivered, issued for delivery, or renewed in this state [Tennessee]." See Tenn. Code Ann. § 56-7-1201(a). State Farm argues that the parties did so because the arbitration procedures provided a relatively simple way to resolve the parties' dispute: if the arbitrator's award did not exceed the $25,000 payment previously made to Mr. Stakem, any coverage issues would be moot. If the arbitrator's award exceeded the previous $25,000 payment, then the parties would litigate the coverage issues pursuant to Tenn. Code Ann. § 56-7-1206(h)(5) ("Coverage issues shall be decided by a court of competent jurisdiction; the arbitrator shall decide issues of tort liability and damages only."). The parties' agreement to this effect is memorialized in the letter of attorney James MacDonald to attorney W. Holt Smith dated June 9, 2005:

3

> Finally, as we discussed, under the provisions of T.C.A. 56-7-1206(h)(5) the arbitrator can decide only questions of "liability and damages" with coverage issues being reserved "to a court of competent jurisdiction," here, our local federal district court, Magistrate Judge Cliff Shirley.

[Doc. 19 Coll. Ex. 1].

The Court agrees with State Farm that Tennessee law is not applicable to the issue currently before the Court. The parties agreed to arbitrate only the issues of liability and damages and to reserve any issues regarding coverage for the undersigned. Under Tennessee conflict of laws rules, which this Court must apply in this diversity action, the liability of an insurance company under a policy of insurance is determined by the law of the state where the contract for insurance was made. See Carr v. American Universal Ins. Co., 341 F.2d 220, 222 (6th Cir. 1965); Hensley v. Miles, No. 2:01-cv-142, 2005 WL 1182528, at *3 (E.D. Tenn. May 18, 2005). In this case, the Stakems were both residents of Florida, and the subject insurance policies were written and delivered to them in the State of Florida. Accordingly, Florida law governs the interpretation of their policies. The plaintiffs' argument that Tennessee law should govern the interpretation of these insurance contracts simply because the underlying liability and damage issues were arbitrated in Tennessee is without merit.

### III.

Having determined the applicable substantive law to be applied in this case, the Court turns to the substantive issues raised by the parties. State Farm first argues that there is no coverage because Mr. Stakem failed to comply with policy provisions and applicable Florida law, particularly the threshold requirements set forth in the Florida Motor Vehicle No-Fault Law ("No-Fault Law"), Fla. Stat. Ann. § 627.737(2), which are incorporated into the subject policy. Specifically, State Farm

4

argues that Mr. Stakem cannot satisfy the threshold requirement of the existence of a permanent bodily injury within the required degree of medical probability because he failed to present proper medical proof at the arbitration proceeding. Further, State Farm contends that the vast bulk of Mr. Stakem's injuries "result from" the injuries to his wife, and consequently all applicable per person limits under the State Farm policies in question totaling $200,000 have been fully exhausted by virtue of presuit payment by State Farm to Mrs. Stakem. [Doc. 13].

Mr. Stakem argues that he is not required to meet the no-fault threshold in order to recover his damages because Florida's No-Fault Law does not apply to motorcycles, and thus, Mr. Stakem argues that he is entitled to receive UM benefits without satisfying any threshold requirement of the No-Fault Law. Mr. Stakem argues that applying the threshold requirements under these circumstances would be a denial of his constitutional right of access to the courts. Even if the terms of the Florida No-Fault Law were applied, Mr. Stakem contends that he has presented proof of a serious and permanent injury, separate and apart from his wife's injuries, and is therefore entitled to compensation under the terms of his insurance policy. [Doc. 15].

The relevant portions of the insurance policies at issue are identical in their terms and state, in pertinent part, as follows:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be sustained by an **insured** and must be caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle**.
>
> The **bodily injury** must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

5

In other words, pursuant to the State Farm policies, the insured may recover only economic damages, such as medical expenses or lost wages, unless the injury constitutes a "serious injury" within the meaning of section 627.737(2) of the No-Fault Law. That provision provides that a plaintiff may recover tort damages for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:

> (a) Significant and permanent loss of an important bodily function.
>
> (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
>
> (c) Significant and permanent scarring or disfigurement.
>
> (d) Death.

Fla. Stat. Ann. § 627.737(2). These threshold requirements are incorporated into the Florida UM statutes as well. Specifically, Fla. Stat. Ann. § 627.727(7) provides that "[t]he legal liability of an uninsured motorist coverage insurer does not include damages in tort for pain, suffering, mental anguish, and inconvenience unless the injury or disease is described in one or more of paragraphs (a)-(d) of s. 627.737(2)."

Under the No-Fault Law, motor vehicles are required to carry mandatory insurance which provides personal injury protection ("PIP") benefits. In exchange, they receive the dual benefit of (1) being reimbursed by their own carrier for most of their own economic damages without regard to fault and for their non-economic damages, so long as the threshold requirements are met and (2) being exempted from liability for non-economic damages, except in cases that satisfy the threshold requirements.

The plaintiff is correct that Florida courts have determined that a motorcycle is not a "motor vehicle" within the meaning of the No-Fault Law, and therefore, a motorcycle operator is not required to maintain security. See Scherzer v. Beron, 455 So.2d 441, 442 (Fla. Dist. Ct. App. 1984); Clausell v. Buckney, 475 So.2d 1023, 1025 (Fla. Dist. Ct. App. 1985). Because motorcycles are exempt from the security requirement, courts have held that a motorcyclist is not required to satisfy the threshold requirement of section 627.737(2) in order to maintain a tort action for damages. See Scherzer, 455 So.2d at 442; Clausell, 475 So.2d at 1025. The Scherzer Court explained this result as follows:

> To say that under the no-fault provisions a motorcyclist is not only precluded from obtaining personal injury protection benefits but barred from maintaining a tort action as well, is to leave a motorcyclist without a remedy. In Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla. 1974), the Florida Supreme Court recognized the derivative benefit from mandatory insurance coverage:
>
>> In exchange for the loss of a former right to recover – upon proving the other party to be at fault – for pain and suffering, etc., in cases where the thresholds of the statute are not met, the injured party is assured a speedy payment of his medical bills and compensation for lost income from his own insurer, even where the injured party was himself clearly at fault . . . . The provisions of F.S. 627.737, F.S.A, do provide a reasonable alternative to the traditional action in tort, and therefore do not violate the right of access to the courts . . . .
>
> Id. at 15. In the case of a motorcyclist, no such alternative exists.

Scherzer, 455 So.2d at 443. Accordingly, the Florida District Court concluded, requiring a motorcyclist to meet the threshold requirement in order to recover damages in tort would be a denial of the constitutional right of access to courts. Id.

7

It is the opinion of this Court that the plaintiff's argument misses the point. The issue is the application of the policy language, not the application of a no-fault statute (except to the extent that the language of the statute is incorporated into the policy). Mr. Stakem's recovery is governed by the UM policy provisions, not the No-Fault Law. The confusion arises because the UM policy carrier chose to describe the UM policy limitations by reference to the No Fault Law's threshold requirements. The policy could have provided the same limitations by setting forth the same words and language that appear in the No-Fault Law. That the policy chose to instead simply reference the section of the No-Fault Law's statutory threshold requirements as the policy's own description of what constitutes a "serious injury" under the policy, does not invoke the operation of the No-Fault Law itself.

The UM statute, section 627.727(7), clearly provides that insurance carriers like the defendant are not required to provide UM coverage for pain and suffering or mental anguish unless the threshold requirements of 627.737(2) are met. Thus, the defendant was not required to provide the plaintiff with UM coverage for the damages he now seeks, and the UM policy that the defendant provided to the plaintiff clearly states this permissible limitation.

The cases cited by the plaintiff, <u>Scherzer</u> and <u>Clausell</u>, indicate that the reason that motorcycles do not have to satisfy the threshold requirements under the No-Fault Law is because motorcycles are not deemed "motor vehicles" under the statute and as such are not subject to the mandatory insurance requirements. As such, motorcycles are not entitled to the <u>benefits</u> that come with the operation of the No-Fault Law (*i.e.,* the exchange of the fault-based recovery in tort for recovery, without a showing of fault, of economic damages and non-economic damages upon meeting certain threshold requirements). As the Florida courts have noted, to exclude a motorcyclist

like the plaintiff from the statutory benefits of the No-Fault Law and to also bar him from a fault-based tort action would leave him without a remedy or right to recover at all. Here, however, the plaintiff is not left without a remedy or right to recover, because the UM policy provides for recovery of certain economic damages (lost wages, earning capacity, medical bills, property damages, etc.), as well as the recovery of certain non-economic damages if certain threshold requirements are met. Indeed, the plaintiff is provided, by the policy language, with the same benefits and limitations as the No-Fault Law would provide. Thus, even though a motorcycle is not a motor vehicle under the statute so as to avail itself of those statutory provisions, this policy language essentially provides the same benefits and limitations – even to motorcycles. Accordingly, the Court concludes that the plaintiff is not deprived of his constitutional right of access to the courts.

Florida courts have interpreted policy language identical to the language at issue in the instant case and have held that Florida UM coverage is not available for non-economic type damages in the absence of the insured meeting one or more of the no-fault thresholds set forth in section 627.737(2). In State Farm Mutual Automobile Insurance Co. v. Dixon, 732 So.2d 1 (Fla. Dist. Ct. App. 1999), the plaintiffs sought UM benefits from their insurance carrier, arguing that they were not required to meet the threshold requirements of the No-Fault Law in order to recover UM benefits because the tortfeasor could not claim the No-Fault Law tort exemption. In so arguing, the plaintiffs relied upon an earlier case, Dauksis v. State Farm Mutual Automobile Insurance Co., 623 So.2d 455 (Fla. 1993), in which the Florida Supreme Court held that the injured motorist was not required to meet the threshold requirements of Fla. Stat. Ann. § 627.737(2) in order to recover UM benefits for non-economic damages where the tortfeasor could not claim the No-Fault Law's tort

9

exemption. Id. at 657. The District Court of Appeals in Dixon distinguished Dauksis on the basis that the policy language at issue in Dauksis provided broader coverage than that required by the statute because the policy provided that the insurer would pay damages for bodily injury that an insured "is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Dauksis, 623 So.2d at 457. The Dixon Court explained as follows:

> The insurance policy involved in Dauksis had the effect of providing greater coverage to an insured than that provided under the statute because State Farm contracted to cover the damages that its insured would be entitled to from the tortfeasor. Since Dauksis, and likely as a result of Dauksis, State Farm altered its policy language. The State Farm policy at issue herein provides that benefits for bodily injury are available under the UM coverage if "[t]he bodily injury [is a] serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience." *The current policy language has the effect of limiting the insured's coverage to that which she or he is entitled to under Florida law.*

Dixon, 732 So.2d at 2-3 (emphasis added). Accordingly, the Dixon Court held that the plaintiffs were required to meet policy requirements, which were the same as the threshold requirements of section 627.737(2)(a)-(d), before they could recover non-economic damages under their UM coverage. Id. at 3. The Dixon decision was recently followed in Sternberg v. Allstate Insurance Co., 900 So.2d 732 (Fla. Dist. Ct. App. 2005) (per curiam), which reaffirmed Dixon's holding that Florida UM coverage is not available for non-economic damages absent the insured satisfying at least one of the no-fault thresholds.

The policy language at issue in the present case is identical to the policy language discussed in Dixon. It limits the availability of UM coverage under the policy to only economic damages unless the insured suffers a bodily injury that is "serious" as that term is defined in the No-Fault Law.

10

The plaintiff's argument in this case would have merit only if the policy was limited to its first paragraph, which provides that the insurer "will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." In that situation, the policy would read the same as the policy in the Dauksis case, and the result reached in that case obviously would apply. If that were the case, the plaintiff could recover damages for pain and suffering, mental anguish, and inconvenience without meeting the threshold requirements because the plain language of the policy would provide an unequivocal right to recover against the insurer any damages that the insured was "legally entitled to recover" from the uninsured motorist. See Dauksis, 623 So.2d at 457; see also Newton v. Auto-Onwers Ins. Co., 560 So.2d 1310, 1313 (Fla. Dist. Ct. App. 1990) (holding insurers were required to provide uninsured motorist coverage in accordance with the term of contracts which provided UM benefits for all damages the insured is "legally entitled to recover"). Although section 627.727 gives the insurer the right to deny UM benefits for pain and suffering, mental anguish, and inconvenience unless the threshold requirements are met, there is nothing to prevent the insurer from providing broader UM coverage than what is provided for by that statute. Indeed, the insurers in both Dauksis and Newton had not availed themselves of the right to so limit the insured's recovery of UM benefits in their policy language. As such, the insurers in Newton and Dauksis actually provided more UM coverage to an insured than would have been provided under the statute.

The policies at issue in Dauksis and Newton did not contain the second paragraph that exists in the present policy, which states that "[t]he bodily injury must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience." This second paragraph

11

was included in the policy at issue in <u>Dixon</u>, and the <u>Dixon</u> Court noted that this policy language was altered "likely as a result of <u>Dauksis</u>." <u>Id.</u> at 2. The <u>Dixon</u> Court thus held that the new, additional policy language required the plaintiff to meet the threshold requirements before State Farm would be liable for non-economic damages. This Court notes that the policy before it contains the same limiting language as the State Farm policy language in <u>Dixon</u>. Accordingly, the policy language of the insurance policy requires the same result. Accordingly, under <u>Dixon</u>, Mr. Stakem is required to meet the threshold requirements of section 627.737(2) of the Florida No-Fault Law in order to recover for any non-economic damages under his UM coverage.

IV.

Having determined that the No-Fault Law requirements as incorporated in the UM policy apply, the Court must now analyze whether Mr. Stakem has satisfied these requirements. State Farm contends, and Mr. Stakem agrees, that only section 627.737(2)(b), which addresses "permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement," is the only section of the statute implicated by this case.

Mr. Stakem argues that he satisfied this requirement because the arbitrator found that he had suffered a serious emotional injury as a result of the defendant's negligence. State Farm argues, on the other hand, (1) that the plaintiff has not produced any medical testimony to establish a "permanent injury within a reasonable degree of medical probability" within the meaning of section 627.737(2)(b) and (2) that the vast bulk of Mr. Stakem's injuries "result[ed] from" the injuries to Mrs. Stakem, and consequently all applicable per person limits under the State Farm policies in question have been fully exhausted by virtue of the presuit payment of the full policy limits to Mrs. Stakem.

12

The arbitrator described Mr. Stakem's injuries as follows:

> Mr. Stakem was dazed and injured but he remembers being helped by a stranger who was tending to his head wound. He also had abrasions to his right elbow but his physical injuries were limited compared to his wife's injuries. He heard her crying and he could see her lying in the right lane of the highway some 10 to 15 feet from him. She was lying on her right side, her eyes were closed and blood was streaming out of one of her ears. He also said that she was "wiggling." *It is this image which has remained in Mr. Stakem's memory since the accident and it is an image which forms a substantial part of his claim of damages in this case.*

[Doc. 11]. The arbitrator also described Mrs. Stakem's injuries and the extensive medical treatment she subsequently received. While Mrs. Stakem was at the Brain Injury Rehabilitation Center ("BIRC") in Orlando, Florida, she came under the care of Dr. Douglas J. Mason, a neuropsychologist. Dr. Mason testified that he and Mr. Stakem met fairly regularly for "informal therapy" while Mrs. Stakem was a patient at BIRC. [Id.]. Mr. Stakem later began formal therapy sessions with Dr. Mason in November, 2004. After treating Mr. Stakem for several months, Dr. Mason diagnosed him with post traumatic stress disorder ("PTSD"), adjustment disorder with mixed emotions and some memory loss. Dr. Mason also opined that Mr. Stakem would need future psychotherapy. [Id.].

The arbitrator found that Mr. Stakem suffered a "serious emotional injury" and other damages that were the proximate and foreseeable results of the defendant's negligence. Specifically, the arbitrator noted that Dr. Mason testified that although Mr. Stakem has the potential to return to a reasonable level of functioning, he may never completely recover. [Id.].

The Court agrees with State Farm that Mr. Stakem has failed to establish that he sustained a "permanent" bodily injury within a reasonable degree of medical probability. Mr. Stakem presented no competent medical proof that any of his bodily injuries are permanent. In his

13

deposition, Mr. Stakem stated that the only physical complaint that he had that was continuing was his back. [Stakem Dep. at 28]. There is no medical evidence, however, to indicate that Mr. Stakem's back injury, or any other bodily injury he sustained, is a permanent medical condition.[2]

V.

For the foregoing reasons, the Motion for Summary Judgment by State Farm Mutual Automobile Insurance Company [Doc. 12] is **GRANTED.** The Motion for Summary Judgment by Plaintiff Daniel Joseph Stakem [Doc. 15] is **DENIED**.

**ORDER TO FOLLOW.**

**ENTER:**

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2]The Court further notes that the testimony of Dr. Mason, as a neuropsychologist, is of questionable competence on the issue of the permanency of any medical condition of the plaintiff within a reasonable degree of <u>medical</u> probability.